**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DOUGLAS P. BROWN,                          )
                                           )
       Plaintiff,                        )
                                           )
  v.                                       )
                                           )     2:04cv1659
COMMISSIONER OF SOCIAL                     )     **Electronic Filing**
SECURITY                                   )
                                           )
       Defendant.                        )
                                           )

## MEMORANDUM OPINION

January **26**, 2006

      Plaintiff, Douglas P. Brown, brings this action against the Commissioner of the Social

Security Administration under 42 U.S.C. § 405(g), seeking review of the Commissioner's final

decision denying his claims for Social Security disability insurance benefits under Title II of the

Social Security Act ("Act"), 42 U.S.C. § 423 and for Supplemental Security Income under Title

XVI of the Act.  Now before this court are the plaintiff's and the defendant's cross motions for

summary judgment.  For the reasons set forth below, the Commissioner's motion will be

GRANTED and the plaintiff's motion will be DENIED.

I.     BACKGROUND

     A.    Procedural Background

      On January 27, 2003, plaintiff protectively filed an application for Social Security

Disability Benefits and Supplemental Security Income under Title II and Title XVI of the Social

1

Security Act. 42 U.S.C. §§ 401-33, 1381-1388f. On June 19, 2003, the regional commissioner denied his claims. Plaintiff subsequently filed a timely request for hearing before an Administrative Law Judge ("ALJ") on August 12, 2003.

Before his January 27, 2003 application for benefits, plaintiff applied for disability benefits and supplemental security income on June 19, 2001. On August 20, 2001 the regional commissioner denied his claim. An ALJ issued a decision on August 14, 2002, concluding that plaintiff is not disabled within the meaning of the Act. Because he did not appeal, a finding of no disability prior to August 2002 is administratively final. See 20 C.F.R. §§ 404.905, 416.1405; Cefalu v. Barnhart, 387 F.Supp.2d 486, 488 (W.D. Pa. 2005).

On February 24, 2004, plaintiff testified at a hearing before an ALJ regarding his January 27, 2003 application. On April 4, 2004, the ALJ, Melvin Benitz, concluded that plaintiff was not disabled within the meaning of the Act. The Appeals Council denied plaintiff's subsequent request for an appeal on October 8, 2004, thus making the ALJ's decision the final agency decision for purposes of judicial review. See 20 C.F.R. §§ 404.955, 404.981, 416.1453, 416.1455, 422.210; Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (noting that ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a claimant's request for review). On October 29, 2004, plaintiff timely filed a complaint requesting judicial review by this court pursuant to 42 U.S.C. § 405(g).

B.    Factual Background

Plaintiff was 43 years old when the ALJ issued his decision, making him a "younger individual" under the relevant regulations. 20 C.F.R. § 404.1563(c). He seeks disability benefits and Supplemental Security Income from December 23, 2000, when his employer terminated him

2

because he did not return to work because of his back pain.  Plaintiff is a high school graduate.

At the time he claims his disability began, he worked as a janitor/maintenance man.  His previous

jobs included work as a deliveryman, cook, dietary assistant, orderly and electrical worker.  The

vocational expert in the case described his work experience as medium to heavy and semiskilled

to unskilled.  He has not been employed in substantial gainful activity since December 2000.

C.    <u>Medical history</u>

Plaintiff has a history of back problems.  In 1988 he received a percutaneous discectomy

for a herniated nucleus pulposus at L4-5.  He has received consistent treatment for his back

problems since 1990.  He alleges that he was discharged in December 2000 because he could not

return to work because of pain and spasms in his lower back that were so severe that he had to lie

down on the floor at work to relieve the pressure.  He alleges that his current health problems are

so sever that he cannot engage in substantial gainful activity.

In January 2001, plaintiff received an MRI of the lumbar spine which showed moderate

disc space narrowing at L4-5 with moderate central disc herniation and moderate disc space

narrowing at L5-S1 with diffusion disc protrusion.   In January and February of 2001, he attended

physical therapy at the direction of Dr. John Steele.   In September 2002, plaintiff received an

MRI of his cervical spine.  This MRI showed mild degenerative disc and uncovertebral

spondylosis in the cervical spine that did not result in significant canal or foraminal narrowing.

Plaintiff received another lumbar spine MRI in October 2002, which revealed mild degenerative

disc and facet disease at L4-5 and L5-S1 resulting in mild foraminal stenosis.

In July 2003, plaintiff had yet another lumbar spine MRI which showed moderate

degenerative disc disease with loss of disc height and disc signal at L4-5 and L5-S1.  At L4-5,

3

there was a mild to moderate disc bulge, mild degenerative facet changes, mild effacement of the thecal sac, mild to moderate neural foraminal stenosis and a possible small disc protrusion. At L5-S1, the was a disc bulge with a small central disc protrusion, minimal effacement of the thecal sac and mild to moderate bilateral neural foraminal stenosis. At L3-4 the MRI revealed mild degenerative disc disease with mild disc bulging and mild neural foraminal stenosis.

Since the late 1980s, Dr. John Schibli has treated plaintiff for various conditions including back pain and carpal tunnel syndrome. The record includes Dr. Schibli's medical files on plaintiff from April 2002 through September 2003. Plaintiff suffered from various medical problems during this period. In April 2002, Dr. Schibli recommended exercise to help alleviate plaintiff's chronic back and abdominal pain by controlling plaintiff's obesity. In June 2002, plaintiff complained of lower back pain after doing some heavy lifting. He presented positive straight leg raising in his right leg and palpable tenderness at L4 and L5, but demonstrated normal reflexes. In September 2002, plaintiff demonstrated muscle spasms and positive straight leg raising in both legs, but no signs of muscle atrophy or motor weakness. In October 2002, he complained of severe neck pain and demonstrated decreased cervical rotation and side bending. By November 2002, he had some cervical spasms but had increased side bending and cervical rotation. In March 2003, he had minimal lumbar spine tenderness and but had normal reflexes and no muscle weakness. In April, June and July 2003, he demonstrated normal strength and straight leg raise tests were negative. In June and July, he complained of severe lower back pain. In July, he displayed a slightly antalgic gait. In September, he had an antalgic gait, muscle spasms, decreased side bending and rotation and positive straight leg raising on his right.

Plaintiff also has bilateral cubital and carpal tunnel syndrome. In November 2002,

4

plaintiff complained to Dr. Schibli about arm numbness, but he had normal grip strength and did not demonstrate any signs of carpal tunnel syndrome. By January 2003, he demonstrated decreased grip strength and elbow tenderness. In January 2003, he went to Parkside Orthopedic Associates, where he saw Dr. Mark Stabile. Plaintiff told Dr. Stabile that he had numbness and tingling in both hands and had for years. He reported that his left hand was worse than his right. He also informed Dr. Stabile that he drummed often and that he had been losing grip strength recently and was losing his sticks while drumming. Dr. Stabile concluded that he had carpal tunnel syndrome. He recommended him to Dr. Bonier for decompression surgery.

He also told Dr. Stabile about his back problems. Dr. Stabile examined X-Rays and the plaintiff's recent MRI results and concluded that they showed mild degenerative disc disease in the lumbar spine, primarily at L4 and L5-S1 and generalized mild spondylosis in the cervical spine. Dr. Stabile recommend epidural blocks, but plaintiff chose to not have the epidurals at that time.

In March 2003, Dr. Jerome Bonier diagnosed plaintiff with bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome and performed decompression of the left median nerve at the wrist with anterior transposition fo the left ulnar nerve. Before this surgery, Dr. Bonier observed that plaintiff had somatic dysfunction of the cervical and lumbar region bilaterally, but also noted that he walked with a normal gait, stood normally and had normal AP and lateral spinal curvatures. Six weeks after the surgery, on April 24, 2003, plaintiff met with Dr. Bonier and reported that he did not have any problems with his elbow and that he had no paresthesias or numbness of the hand. Dr. Bonier noted that plaintiff reported some pain in the volar aspect of his wrist but was using his arm normally otherwise. Dr. Bonier recommended

that plaintiff use his arm normally and see him for reevaluation only if necessary.

In May 2003, at the direction of the state agency, plaintiff saw Dr. Lloyd Richless. Plaintiff reported to Dr. Richless that he was feeling much better since his March ulnar nerve transposition and that pain and paresthesias had diminished. Plaintiff also informed Dr. Richless that he had not worked since December 2000, but that he had recently applied to several jobs. Dr. Richless observed that plaintiff had a normal gait and station and that he sat through the entire examination with any problems. Plaintiff also did not have any problems changing positions between lying, sitting and standing. He demonstrated 5/5 bilateral grip strength; 2+ equal and active reflexes at the elbows, wrists, knees and ankles; and 2+ peripheral pulses in the hands and feet.

Dr. Richless concluded that plaintiff had chronic neck and back pain with underlying degenerative joint disease and ulnar nerve transposition at the left elbow with relief of symptoms. Dr. Richless also concluded that plaintiff could frequently lift and carry ten pounds or less and could occasionally lift or carry twenty-five pounds or less. Plaintiff did not demonstrate any limitations in sitting, standing or walking and his ability to push and pull with hand and foot controls was limited only by his lifting and carrying ability. Further he could occasionally perform all listed postural activities (bending, kneeling, stooping, crouching, balancing and climbing) and did not have any other limitations on physical functions nor did he have any environmental restrictions.

### D.     Plaintiff's testimony

At the February 24, 2004 hearing, plaintiff testified that he last worked in December 2000 as a janitor/maintenance man and that he lost his job because he did not return to work because

6

of his back pain.

He testified that he has pains in his lower back and that sometimes when he stands his leg will give out from the pain. If he bends over to tie his shoe, he has severe pain. He testified that he cannot sleep through the night, that he tosses and turns in bed because of the pain and that it takes him a half hour to get out of bed in the morning. He testified that he will spend three or four days in bed because he cannot walk without pain and he has three to seven "bad" days a month, during which he does not get out of bed. He cannot stay in one position for more than thirty minutes without have to shift. He cannot stand on concrete for more than fifteen minutes. He also stated that his muscle spasms are so severe that he cannot concentrate. Some days he has difficulty walking up and down the stairs in his home.

He testified that his condition is worse than it was when he appeared before an ALJ in 2002. He testified that he can no longer hunt or fish, though he still pays for his hunting and fishing licenses. He also testified that he golfed three times last year, but that he had to stop halfway through the round during the third time because he could not walk any further. He lies down an hour and a half to two hours a day. At the time of his previous hearing, he only had to lie down an hour a day.

He complained of numbness in his hands, even after the surgery, though the overall results of the surgery were fairly good. He testified that he still plays the drums, but that he can only play for a song or two before he has to stop. He testified that he can only lift 10 pounds with one hand and fifteen to twenty pounds with two hands.

      E.     Vocational Expert's Testimony

The ALJ asked the vocational expert, Morton Morris, whether a hypothetical person of plaintiff's age, education, work history and health could perform any jobs that were available in significant numbers in the national economy. The judge described a hypothetical man who was 40 years old at the time of the alleged onset of the disability, was left-handed, and had a high school diploma and a diploma from a one-year electrician's program. The hypothetical person suffered from degenerative disc disease and had some cervical to lumbar pain associated with the disease. He also had carpal tunnel syndrome in his left hand, though a recent surgery provided good results. Tingling remained in the left hand fingers after surgery. The right hand may also have suffered from mild carpal tunnel syndrome. He also suffered insomnia because of the pain, which is relieve somewhat by medications that have some side effects such as lightheadness and sleepiness. His health problems would likely require a job with a sit/stand option that did not require much stooping, climbing or balancing, or overhead reaching; did not expose the hypothetical person to temperature extremes or humidity extremes; and required only simple, routine, unskilled tasks.

The VE testified that there were many jobs that were sedentary, required only light work and had a standing option. The VE offered the examples of a television monitor, simple assembler, tester, information attendant, or ticket taker as examples jobs that the hypothetical person could do. The VE testified that there were 570 jobs available in these categories in Southwestern Pennsylvania.

The VE testified that plaintiff could not be employed in any of his past jobs because they all required medium to heavy exertion. He also stated that if a person were not able to concentrate for even fifteen minutes because pain distracted them, then that person could not

8

perform the sedentary jobs he named. Further, he testified that if the individual were not able to go to work three to seven days a month because of pain, then that person also could not work in any of the positions he named.

F.     The ALJ's decision

On April 2, 2004, the ALJ rejected plaintiff's claims for benefits. The ALJ concluded that plaintiff did not present any new and material evidence that would support a change in the prior hearing decision. The ALJ thus declined to reopen the prior claim and only considered whether the plaintiff's condition became disabling after August 14, 2002, the date of the prior hearing decision.

In concluding that plaintiff was not disabled, the ALJ applied the five-step inquiry required by 20 C.F.R. § 404.1520. See Morales v. Apfel, *Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir.2004). For a claimant to qualify as disabled within the meaning of the Social Security Regulations, he must: (1) not currently be engaged in substantial gainful employment; and (2) suffer from a "severe impairment." 20 C.F.R. § 404.1520(b)-(c). If the claimant has a "severe impairment," then (3) the ALJ must determine whether that impairment meets or equals those listed in 20 C.F.R. § 404, Appendix 1, Subpart P, Regulations no. 4. Id. at § 404.1520(d). If the claimant meets or equals the listed impairments, then he will be found to be disabled. Even if the claimant does not meet the listed impairments, he may be found to be disabled if the claimant (4) does not have the residual functional capacity ("RFC") to perform work he has done in the past ("past relevant work") despite the severe impairment; and (5) does not have the RFC to perform other jobs existing in the national economy in view of the claimant's age, education, work experience and RFC. Id. at § 404.1520(e)-(g).

9

The ALJ concluded that the plaintiff, though he did work for a few months, has not engaged in substantial gainful activity since the previous hearing decision. The ALJ also concluded that the plaintiff's cervical and lumbar disc disease and bilateral carpal/cubital tunnel syndrome with ulnar neuropathy are severe impairments. The ALJ also concluded, however, that these impairments, though severe, did not meet any of the criteria for the impairments listed in the Social Security Regulations. In support of this conclusion, the ALJ noted that diagnostic studies of the plaintiff's spine showed evidence of only mild to moderate disc bulging/protrusion with no herniation, nerve root compression, arachnoiditis or vertebral fracture. The ALJ also noted that Dr. Richless observed that plaintiff only had a mild decrease in range of motion and had 5/5 grip strength bilaterally and 2+ peripheral pulse of the hands and feet. The ALJ concluded that plaintiff also has hypertension, a small hiatal hernia, distal esophagitis and distral antral gastritis, but that these impairments were not severe.

The ALJ then examined the plaintiff's RFC. The ALJ concluded that the plaintiff's medical impairments, when combined with his subjective complaints of pain, prevented plaintiff from performing his past relevant work experience. After reviewing all of the medical evidence, the plaintiff's subjective complaints of pain and that vocational expert's testimony, the ALJ concluded that plaintiff had the RFC to perform many jobs at the sedentary exertional level, which were available in significant numbers regionally and nationally. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Act.

II.    STANDARD OF REVIEW

The Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). This court's review of the

Commissioner's final decision, however, is quite limited.  See Rutherford v. Barnhart, 399 F.3d

546, 552 (3d Cir. 2005).  We must affirm the Commissioner's decision unless it is not supported

by substantial evidence.  Id. (citing 42 U.S.C. § 405(g); Plummer v. Apfel, 186 F.3d 422, 428 (3d

Cir. 1999).  Substantial evidence is "more than a mere scintilla, [though] it need not rise to the

level of a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

Substantial evidence means, "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  Id. (quoting Newell v. Comm'r of Soc. Sec., 347 F.3d 541,

545 (3d Cir.2003)).  This court may not "weigh the evidence or substitute [its own] conclusions

for those of the fact-finder." Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir.1992)).

III.    DISCUSSION

    A.    Disability Determination Process

       Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance

benefits to persons who have contributed to the program and who suffer from a physical or

mental disability." Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. §

423(a)(1)(D)). The Act defines a "disability" as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Under the Act, a claimant is unable

to engage in any "substantial gainful activity," "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

11

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine

whether a claimant suffers from a physical or mental disability within the meaning of the Act, the

ALJ must apply the five-step evaluation process provide for in 20 C.F.R. § 404.1520.

      B.    The ALJ's Consideration of the Medical Evidence

Plaintiff argues that the ALJ erred by failing to consider certain medical evidence and

improperly weighing the medical evidence. These claims are without merit.

First, plaintiff alleges that the ALJ erred when he concluded that diagnostic studies

showed only mild to moderate disc bulging with no disc herniation, even though a 2001 MRI

showed a moderately-sized central disc herniation. The ALJ did not err in disregarding the 2001

MRI, because a determination of no disability prior to August 14, 2002, the prior hearing date, is

administrative final. See 20 C.F.R. §§ 404.905, 416.1405. Plaintiff alleges that the ALJ ignored

evidence that Dr. Schibli and another doctor from Dr. Schibli's office, Dr. Shipton, observed in

2003 that plaintiff had disc herniation. The record does not reflect this. Dr. Schibli's September

10, 2003 report, to which plaintiff refers, clearly states that plaintiff "had" disc herniation in the

past. Dr. Shipton's July 23, 2003 report does state that an MRI "was done, which shows a disc

herniation on the left at L4-5, which is slightly progressively worse than last year." Dr. Shipton

did not identify to which MRI he referred. Plaintiff's July 10, 2003 lumbar spine MRI did not

show any disc herniation. Diagnostics tests taken after August 14, 2002 did not reveal any disc

herniation and thus the ALJ did not err when he concluded that plaintiff did have any disc

herniation.

Plaintiff also argues that the ALJ improperly ignored evidence of a 1986 back surgery and

thus incorrectly concluded that plaintiff has not "required aggressive medical treatment, frequent

hospital confinement/emergency room care, or surgical intervention due to a vertebrogenic disorder of the cervical and lumbar spines." The ALJ was not required to consider the 1986 back surgery, however, as it occurred well before the August 14, 2002 hearing.

Finally, plaintiff alleges that the ALJ applied too much weight to the opinion of Dr. Richless, the consultative examiner. The ALJ must "accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429). In some cases, the ALJ must give a treating physician's opinions controlling weight. See 20 C.F.R. § 404.1527(d)(2). The ALJ did grant Dr. Schibli's conclusions great weight and did not reject any of Dr. Schibli's findings. While the ALJ did note Dr. Richless's findings, Dr. Richless's conclusions about plaintiff's functional limitations were entirely consistent with Dr. Schibli's findings. Both doctors agreed that plaintiff suffered from degenerative disc disease and chronic pain, but neither physician concluded that plaintiff was disabled an unable to engage in substantial gainful activity. Thus, the ALJ did not improperly weigh the medical evidence.

     C.    Determination of Plaintiff's Credibility

Plaintiff also alleges that the ALJ erred when he concluded that Plaintiff was not entirely credible. Specifically, plaintiff alleges that the ALJ did not provide specific reasons for his credibility determination as required by Social Security Ruling 96-7P and that the ALJ improperly disregarded complainant's subjective complaints of pain. These claims are not supported by the record.

Contrary to plaintiff's contention, the ALJ provided numerous specific reasons for

13

questioning petitioner's credibility.  The ALJ noted that, despite the plaintiff's claims that his pain was debilitating and that he could not carry more than five or ten pounds or sit stand or walk for long periods of time, plaintiff has recently been able to golf, drive short distances, care for his personal needs, grocery shop, hunt, watch television and play the drums regularly. Petitioner argues that it was improper for the ALJ to rely on this evidence because, "In this Circuit, activities such as hobbies or social activities cannot be used to show the ability to work."  In support of this claim, plaintiff cites Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001); Frankenfield v. Bowen, 861 F.2d 405 (3d Cir 1988); and Smith v. Califano, 637 F.2d 968 (3d Cir. 1981).

Plaintiff misstates the holdings of these cases.  In Farganoli and Smith, the Third Circuit held that a plaintiff's participation in "sporadic and transitory activities" may not be used to determine a plaintiff's ability to engage in substantial gainful activity.  See Fargnoli, 247 F.3d at 40 n. 5;  Smith, 637 F.2d at 972.  In Fargnoli, the sporadic and transitory activity was a one time trip to Europe eight years before the ALJ issued his disability determination. Fargnoli, 247 F.3d 40 n. 5.  This is clearly distinguishable from the recent and regular activities of the plaintiff in the present case.

In Smith, the Third Circuit held that the ALJ's decision to deny benefits was not supported by substantial evidence where the ALJ relied on the claimant's testimony that "he had full use of his hands, arms and legs, does shopping and last fall went hunting twice" in denying the claimant's claim for disability insurance benefits. 637 F.2d at 971.  The court noted that "shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on

14

two days." Id. at 971. The Third Circuit further noted that "[t]he ALJ's error in drawing an inference from sporadic activities to a lack of disabling pain is compounded by the absence of corroborating medical testimony." Id. at 972. In Smith, medical evidence in the record supported the claimant's allegations that her pain was disabling. Id. at 971. In the present case, the ALJ considered Plaintiff's daily activities only after considering all of the medical records, which were all consistent with the ALJ's finding that the plaintiff did not suffer from disabling pain. See, e.g., Lozado v. Barnhart, 331 F.Supp.2d 325, 338 (E.D.Pa. 2004) (distinguishing Smith and finding no disability where ALJ reviewed medical record and medical record was consistent with finding of no disability). Unlike in Smith, the plaintiff's treating physician in the present case never found that plaintiff suffered from debilitating pain.

Frankenfield is also distinguishable. In Frankenfield, the Third Circuit held that the ALJ erred where, based only on the claimant's testimony that "he took care of his personal needs, performed limited household chores, and occasionally went to church," he concluded that the claimant was not disabled despite the opinions of three treating physicians, who all found that the claimant was disabled.    Frankenfield, 861 F.2d at 408.

The ALJ properly weighed the relevant evidence in determining that the petitioner did not suffer from disabling pain. First, plaintiff does not provide any legal support for the claim that the ALJ is not allowed to consider a claimant's social activities or hobbies in making a disability determination. Second, the ALJ was permitted to consider evidence of petitioner's daily activities. The Social Security regulations provide that allegations of pain and other subjective symptoms advanced by a claimant must be supported by objective medical evidence. See 20 C.F.R. § 404.1529. If an ALJ concludes that the available medical findings and evidence could

15

reasonably cause the claimant's alleged symptoms, the ALJ must attempt to determine the severity of the claimant's pain as well as the degree to which it may limit the claimant's ability to work. Id. This determination "requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999). 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p provide guidelines for the ALJ to use when evaluating a claimant's subjective complaints. Among the factors an ALJ is to consider in making the credibility determination about pain and subjective symptoms, including the claimant's "daily activities." 20 C.F.R § 404.1529(c)(3)(I), 416.1529(c)(3)(I); SSR 96-7p. Thus it was proper for the ALJ to consider petitioner's regular activities when determining whether petitioner was disabled.

The ALJ supported his determination that petitioner did not suffer from disabling pain with substantial evidence on the record, including objective medical evidence. For example, the ALJ noted that the plaintiff has not suffered from any significant muscle atrophy; has no disc herniation, nerve root compression, arachnoidotis or a vertebral fracture; has not had his medicines changed frequently by his doctors because of ineffectiveness or side effects; and has not demonstrated any motor or sensory loss in physical examinations despite his claims of numbness and chronic pain. Further, the ALJ observed that no medical source, including petitioner's treating physician, had concluded that petitioner was disabled within the meaning of the Act.

In concluding that petitioner did not suffer from pain that would render him disabled within the meaning of the Act, the ALJ considered all relevant evidence and appropriately weighed the evidence. The ALJ's determination that petitioner did not suffer from debilitating

16

pain was supported by substantial evidence, including objective medical evidence on the record.

       D.    <u>ALJ's Determination of the Plaintiff's RFC</u>

     Plaintiff next argues that the ALJ erred in determining that plaintiff has the RFC to perform certain sedentary jobs. Specifically, plaintiff alleges that the ALJ failed to consider Social Security Rulings 96-9p and 83-12 in assessing the plaintiff's eroded occupational base for sedentary work. This argument is not meritorious.

     SSR 96-9p governs RFC assessments for less than a full range of sedentary work. SSR 96-9p. SSR 96-9p provides that a finding of an RFC of less than a full range of sedentary work is less critical in individuals under 50 because, "age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work." SSR 96-9p. Further, "In deciding whether an individual who is limited to a partial range of sedentary work is able to make an adjustment to work other than any PRW [past relevant work], the adjudicator is required to make an individualized determination, considering age, education, and work experience." <u>Id</u>. If the adjudicator finds that the individual is able to do other work, "the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country" if the individual's impairment has "more than a slight impact on the individual's ability to perform the full range of sedentary work." <u>Id</u>.

     Plaintiff alleges that the ALJ failed to follow the requirements of SSR 96-9p with respect to evaluating the plaintiff's need to alternate sitting and standing and his restricted ability to

stoop.[1]  SSR 96-9 also provides specific guidance for valuating the effect of different limitations on the full range of sedentary work.  With respect to the need to alternate sitting and standing, SSR 96-9p provides, "Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."  Id.  The extent of the erosion caused by the need to alternate sitting and standing is a fact specific inquiry and SSR 96-9 instructs, "It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work."  Id.  Regarding limitations on the ability to stoop, SSR 96-9p provides that restriction "to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work."  Id.  In "cases where the individual is limited to less than occasional stooping," SSR 96-9p instructs that "consultation with a vocational resource may be particularly useful."  Id.

The ALJ followed SSR 96-9p in evaluating how these limitations eroded the plaintiff's RFC and substantial evidence supported his finding that plaintiff was not disabled.  Plaintiff is under 50, and thus a finding of less than a full range of sedentary work does not direct a finding of disability.  The ALJ considered all of the evidence and concluded that plaintiff had the RFC to

---

[1]  Plaintiff also alleges that the ALJ misapplied SSR 96-9p when evaluating petitioners restricted use of his left arm.  Plaintiff, however, fails to explain how the ALJ erred in his consideration of limitations on petitioner's use of his arm.  Plaintiff argues only that limiting plaintiff to "no repetitive pushing or pulling with the upper left extremity" "also impacts that claimant's ability to perform a wide range of sedentary work," without providing any explanation as to how the ALJ erred in determining the extent of this impact.  The ALJ complied with SSR 96-9p when he provided for restrictions on the plaintiff's use of his left arm in the hypothetical he provided to the vocational expert.  The vocational expert testified that there were jobs available in significant numbers in the regional and national economies for persons with such limitations.

perform a sedentary job that (1) did not require plaintiff to climb, balance, reach overhead or stoop; (2) did not expose plaintiff to temperature or humidity extremes; (3) had a sit/stand option; (4) required only simple, routine, repetitive tasks; and (5) did not require significant use of the upper left extremity.   After concluding that the petitioner did have certain limitations on his ability to perform a full range of sedentary work, the ALJ consulted with a vocational expert who testified there were a significant number of jobs in the economy that plaintiff could perform with the limitations recognized by the ALJ and posed to the vocational expert in a hypothetical.   The vocational expert then testified that the plaintiff could work as a push button tester, ticket taker, television monitor, simple assembler or an information attendant.   The vocational expert then testified that there were 570 jobs available regionally and 444,000 jobs available nationally in these categories.   The ALJ clearly complied with the requirements of SSR 96-9p.

Petitioner also alleges that the ALJ erroneously ignored the requirements of SSR 83-12. This argument also lacks merit.   SSR 83-12 governs the determination of disability where a claimant's exertional RFC does not coincide with the exertion level for a specific range of work as provide for in the Medical-Vocational Guidelines of the appendices of Social Security Regulations No. 4, Subpart P.   SSR 83-12 provides that "[w]here an individual exertional RFC does not coincide with the definitions of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected."   Id.   Where the extent of the effect on the occupational base is not clear, "the adjudicator will need to consult a vocational resource."   Id.   Regarding limitations on sitting and standing, SSR 83-12 provides, "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should

19

be consulted to clarify the implications for the occupational base." Id. In the present case, the ALJ consulted a vocational specialist, who considered the effect of plaintiff's need to alternate sitting and standing on his occupational base. The ALJ thus clearly complied with SSR 83-12.

The ALJ complied with SSR 96-9p and SSR 83-12 when he determined that plaintiff had several limitations that limited his ability to perform a full range of sedentary work, but that these limitations were not severe enough to render plaintiff disabled within the meaning of the Act. Substantial evidence supported the ALJ's determination, including the testimony of a vocational expert who, considering the limitations on the plaintiff's ability to perform a full range of sedentary work, concluded that there were jobs that plaintiff could perform that were available in significant numbers in the regional and national economies.

E.    Decision to not Reopen Prior Hearing Decision

Plaintiff alleges that the ALJ erred when he refused to reopen the August 14, 2002 hearing decision. While an unappealed decision of the Commissioner is a final decision, 20 C.F.R. §§ 404.955, 416.1455, a decision may be reopened within one year of the date of initial determination for any reason, 20 C.F.R. §§ 404.988, 416.1488, for any reason. The decision whether or not to reopen a claim is at the discretion of the Commissioner and may not be reviewed by federal courts absent "colorable constitutional claims." See, Califano v. Sanders, 430 U.S. 99, 107-09 (1977); Tobak v. Apfel, 195 F.3d 183, 188 (3d Cir. 1999). Plaintiff does not claim that the ALJ violated the Constitution when he denied the plaintiff's request to reopen the prior hearing decision, and thus this court does not have jurisdiction to review the ALJ's decision to not reopen the August 14, 2002 hearing decision.

IV.     CONCLUSION

For the foregoing reasons, this Court concludes that the ALJ correctly applied the relevant

legal standards and that the decision of the ALJ is properly supported by substantial evidence.

The Commissioner's Motion for Summary Judgment will be granted and Plaintiff's Motion for

Summary Judgment will be denied. An appropriate Order follows.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge

cc:     Paul Kovac, Esquire
        United States Attorney's Office
        700 Grant Street
        Suite 4000
        Pittsburgh, PA 15219

        Pamela M. Schiller, Esquire
        Blaufield, Schiller & Holmes LLP
        810 Penn Avenue
        Suite 600
        Pittsburgh, PA 15222